James Low, in equity, *vs.* Francis Low and others.

Kennebec.    Opinion March 17, 1885.

*Will.    Legacy.    Conditions.*

Where a testatrix in her will gave to a son one undivided tenth of her estate with this provision, "the same to be endorsed on a note given by him to my daughter Emily aforesaid, in the year 1878." *Held,* that it was the duty of the executor to appropriate the legacy to the payment of such note, and pay the residue only, if any, to the legatee.

On appeal.

Bill of interpleader by the executor of the will of Mary Jane Low of Clinton against Francis Low, James W. Sylvester and Emily L. Chase, to obtain the instruction of the court to whom he shall pay the legacy and bequest to said Francis Low. James W. Sylvester claimed it by virtue of an assignment from the legatee dated December 20th, 1881, and he and Emily L. Chase, had each demanded of the executor the amount of the legacy.

Francis Low and James W. Sylvester, on the one side, and Emily L. Chase, on the other, were ordered and decreed to interplead, and thereupon filed their several pleas claiming the fund. The case was heard on the pleadings and proof; and a decree was entered by the court in favor of Low and Sylvester. From this decree Emily L. Chase appealed to the law court.

Other material facts stated in the opinion.

*Edmund F. Webb* and *Appleton Webb*, for Emily L. Chase, appellant, cited: *Swasey* v. *American Bible Soc.* 57 Maine, 524; *Tappan* v. *Deblois*, 45 Maine, 122; *Nason* v. *First Church*, 66 Maine, 105; *Richardson* v. *Knight*, 69 Maine, 288; *Pettingill* v. *Pettingill*, 60 Maine, 412; *Nutter* v. *Vickery*, 64 Maine, 490; *Paul* v. *Compton*, 8 Ves. 379; *Dashwood* v. *Peyton*, 18 Ves. 41; 2 Pomeroy's Eq. § § 1014, 1013, 1048, 1051, 1058, 1080; 1 Perry, Trusts, § § 112, 223; *Harding* v. *Glyn*, 1 Atkyns, 469; *Pushman* v. *Filliter*, 3 Ves. 9; *Brunson* v. *Hunter*, 2 Hill, Ch. (S. C.) 490; *McRee* v. *Means*, 34 Ala. 349; *Dresser* v. *Dresser*, 46 Maine, 48; *Erickson Willard*, 1 N. H. 217; *Cruwys* v. *Colman*, 9 Ves. 320; *Rogers* v. *Jones*, 8 N. H. 264; *Farnsworth* v. *Childs*, 4 Mass. 637.

*Brown and Carver*, for appellees.

It will be noticed that this note has matured into a judgment and it is therefore *functus officio*. Hence the language of the will cannot be complied with and produce any good. It would be an idle ceremony to indorse said legacy upon a note which has passed into a judgment. Another suggestion,— in appellant's name a suit was brought on this note against Francis Low in which James was summoned as trustee. The theory then was that James held this legacy as belonging to Francis and not to her. Did she not waive her right to this fund under the will by bringing that suit?

Now as to the construction of the bequest. To give anything to a person *ex vi terimini* carries with it the right to have and enjoy it. To hold an object of gift up before a person and say, " I give this to you," and then inform that person that he cannot have or enjoy it, but that it shall be received and enjoyed exclusively by another cannot be called a gift. A gift must contemplate some enjoyment of the subject of the gift by the donee.

Hence if his mother intended to make Francis a gift of any portion of her estate, she intended that he should receive and enjoy it. She could not have intended to tantalize him. The only purpose of testatrix by the provision to endorse the same on the note was to suggest to the legatee the use to which she desired he should put the legacy. If she intended it as

mandatory on the legatee she would have made use of apt words to make her intention plainer. 4 Kent's Com. 145.

If intended to be mandatory it would be repugnant to the gift and void. *Blackstone Bank* v. *Davis*, 21 Pick. 42; *Gleason* v. *Fayerweather*, 4 Gray, 348; 2 Dane's Abr. 22; 5 Ves. 460; 10 Ves. 265; 1 Ves. 286; 3 Ves. 324; 4 Kent, Com. 131–143; 4 Simons, 141; Coke on Lit. 227 *a*; 18 Ves. 56; 1 Denio, 450; Bacon's Abr. Tit. "Conditions;" 4 Sandf. 36; 2 Ohio, 380; 38 Maine, 18; 2 Redf. Wills, 228 and notes; 29 Mich. 82; 2 East. 147.

EMERY, J. In order to ascertain what a testator intended by any clause in his will, courts will place themselves so far as practicable, in his position, and look at matters as they appeared to him. They will endeavor to discern his probable motives, objects and desires, and so ascertain what he was thinking to effectuate by his will. His leading purpose, as indicated by his words construed with reference to all the attending circumstances, is to have sway unless some rule of law forbids.

Without giving our analysis of the testimony which is rarely advisable in a judicial opinion, we gather from the testimony and the will, the following facts. The testatrix and her husband had four children. One of these, Francis Low, Jr. was something of a spendthrift, and was in a chronic state of indebtedness. He had received many advances from his father, amounting, according to his written acknowledgment to at least fifteen thousand dollars. In 1878 he applied to his father for a gift of five hundred dollars, but was refused on the ground he already had more than his share. His sister Emily then loaned him five hundred dollars and took his note therefor. Francis claims the money really came from his father, and was not Emily's, but we regard this as immaterial. He received five hundred dollars, and gave his note for it. It was a debt he owed, and was represented by that note, no matter who was the real creditor. In 1879, the father bought his peace of Francis and took a sealed release of all claims upon his estate. We think the above facts were known to the testatrix, when she made her will in February, 1880, and

that the five hundred dollar note appeared to her as a debt due to Emily from Francis. The father died May, 1881.

In her will the testatrix, Mary Jane Low, of Clinton, gave to her "beloved son, George Low," five-tenths of her estate; to her "beloved son, James Low," two undivided tenths; to her "beloved daughter, Emily Chase," two undivided tenths, and to her "beloved son, Francis Low, Jr. of Clinton, aforesaid, one undivided tenth of my estate, the same to be endorsed on a note given by him to my daughter Emily, aforesaid, in the year 1878." This one-tenth, as the bill alleges, amounted to about five hundred dollars, the face of the note. She gave nine-tenths to the other three children, two of them residing in distant states. She gave only one-tenth to Francis who lived in the same town with her, and whose natural share would have been more than twice as much. She gave the nine-tenths absolutely. She gave the one-tenth for a specific purpose, to be endorsed on a note given by the legatee. She evidently thought, from past experience, it would be of little use to leave any property to Francis. It would soon be spent or taken by his creditors. She wanted the debt to her daughter to be paid however. That was her leading purpose. A subsidiary purpose was to give Francis the benefit of the surplus, if any.

It is the duty of the executor to effectuate that purpose. The executor is not only to administer the estate, but to execute the will of the deceased, when that will is ascertained. Were the devise to Francis, with the added direction that the amount be paid into a bank to his credit, the executor could pay it into the bank and thereby discharge himself. Were there a similar devise with the added direction that the amount be converted into U. S. bonds, the executor could so do. Here the command is that the amount be paid on the note — that is, paid to the holder of the debt to the credit of Francis. That would be a payment to Francis. He would have the benefit of it. It would be a meritorious disposition, and the disposition intended by the testatrix.

We know no rule of law that forbids the executor to carry out this purpose of the testatrix. The counsel for Francis contends

that the devise is in fee and that any limitation is void. It is true that a proviso that the property shall not be aliened, or shall not be liable for the devisee's debts, has been often held void, as inconsistent and contrary to public policy. Here there is no such restraint. The devise is not unconditional in the first instance, with a subsequent illegal restriction. The testatrix has not undertaken to tie up the property from alienation, nor to devote it to any illegal purpose. The authorities cited do not apply.

There are more than precatory words in the devise, though such words from one having power to command what shall be done with his property, amount to a command that should be obeyed. *Dashwood* v. *Peyton*, 18 Ves. 41; *Pushman* v. *Filliter*, 3 Ves. 8. In *Erickson* v. *Willard*, 1 N. H. 217, there was a devise of all the estate in fee to J. W., the executor, with this clause, "I desire that the said J. W. should, at his discretion, appropriate a part of my estate aforesaid, not exceeding fifty dollars a year, to the support of the widow, M. E.," &c. Assumpsit was brought against the legatee, who was also executor, and recovery was had upon the ground there was a trust for M. E.

Our conclusion in this case is, that the amount of the note should be paid by the executor to the owner of the note, or the judgment recovered thereon, that being the intent of the testatrix. The costs in the suit on the note have been added since the death and are not to be paid by the executor. The balance of the one-tenth, if any, is to be paid to Sylvester, the assignee, who can stand no better than his assignor. The complainant's costs are to be paid out of the estate of the testatrix.

> *Decree of interpleader affirmed. Decree in favor of Sylvester reversed. Decree to be made in accordance with this opinion.*

PETERS, C. J., WALTON, DANFORTH, LIBBEY and FOSTER, JJ., concurred.